JAMES M. WOOD *versus* ESTES & SAUNDERS, AND *versus* MALBON, HILTON, WOOD, LOTHROP & BROWN, *as Trustees.*

The Act of 1849, c. 117, does not authorize the introduction of new testimony, in this Court, in trustee processes brought here by exceptions from the District Court.

It was designed merely to test the correctness of the District Judge, in his adjudications *as to matters of fact,* upon the evidence before him.

In a trustee process, the taking of a chattel mortgage from the principal defendant to secure a debt due from him to the mortgagee, though the chattel be of greater value than the amount of the debt, will not bind the mortgagee as trustee of the mortgager, if, prior to the service of the process, he have made a sale and transfer of the debt and mortgage.

In the case of goods mortgaged, the surrender of them by the mortgagee to the mortgager, prior to the service of the trustee process, furnishes no pretence for holding the mortgagee as trustee of the mortgager.

Though a person may have received the goods of a co-partnership in payment of a debt, he will not be held as trustee, in a suit against the firm, unless it appear that the debt was not jointly due from the co-partners.

A mortgagee of goods is not chargeable as trustee of the mortgagor, if he have neither had possession of the goods nor exercised control over them.

Wood *v.* Estes.

On Exceptions from *Nisi Prius*, Rice, J., presiding.

The questions for consideration relate to the chargeability of the trustees. They answered respectively that they had no other business relations with the principal defendants than those stated in their disclosures. The Judge ruled, that they were not liable as trustees. To that ruling the plaintiff excepted.

The substance of the disclosures is presented in the opinion of the Court.

*Stewart*, for the plaintiff.

We move for leave to introduce new testimony as to the facts. The statute of 1849, c. 117, authorizes this Court, when adjudicating upon trustees' disclosures on exceptions, to reëxamine the whole case, both as to fact as well as law, and opens to the full Court " the whole matter as to the liability of the supposed trustee, including the fact and the law." The exceptions are merely the mode in which the case is to be brought before this Court. When here, the Court will give its aid to every measure needful to obtain a full presentation of the merits of the case.

Shepley, C. J. — The statute referred to does not reach a case like this. It was intended to meet a particular difficulty. By the previous statute, the adjudication of the District Court, *as to matters of fact*, was conclusive. The Act of 1849 allowed this Court to pass upon such matters of fact, as well as upon the law. But the facts, upon which the District Judge passed, cannot be varied by new testimony. The exceptions are only to try the correctness of his decisions, as to the law, and as to the facts upon the evidence before him.

*Stewart.* — I had supposed the object of the law makers was not so much to find out whether the Judge below was correct, as to allow causes to be decided upon their merits. But upon the exceptions as they stand, I beg leave to offer the following views : —

Co-partnership debts must all be paid out of the partnership funds, before creditors of the individual partners can be permitted to appropriate any part of them toward their de-

mands. *Smith* v. *Barker*, 10 Maine, 458; *Commercial Bank* v. *Wilkins*, 9 Maine, 28; *Douglass* v. *Winslow*, 20 Maine, 89; *Fisk* v. *Herrick*, 6 Mass. 271.

Where a creditor of one partner obtains the property of the partnership on his separate debt, either by contract or sale on mense process or execution, he may be held as trustee of the partnership by a partnership creditor. *Pierce* v. *Jackson*, 6 Mass. 242; Minot's Digest, 549, § 32.

One partner has no authority to pledge or mortgage the partnership goods for his own separate debts. Story on Part. § 132, note.

"The act is an illegal conversion of the partnership funds, and the separate creditor can have no better title to the funds than the partner himself had." *Rogers* v. *Batchelor*, 12 Peters, 229, 232; Story on Partnership, 220.

"And it makes no difference in such case, whether the separate creditor had or had not knowledge at the time, of the fact of the fund being partnership property." *Rogers* v. *Batchelor*, before cited; Story on Partnership, before cited.

"The true question is, whether the title to the property has passed from the partnership to the separate creditor." *Rogers* v. *Batchelor*, before cited; Story on Partnership, before cited.

"In all such cases, the transaction by which the funds, securities and other effects of the partnership have been so obtained by a separate creditor of one partner, will be treated as a nullity." Story on Partnership, § 132.

The burden of proof is upon the holder of a partnership security for a private debt, to show the consent of all the partners. Story on Partnership, 216; *Chazournes* v. *Edwards & al.* 3 Pick. 5; *Darling* v. *March*, 22 Maine, 184.

Where goods have been taken from the possession of a person summoned as trustee by an attaching officer, before the trustee discloses, he is still liable as trustee, he having a claim over upon the officer. *Parker* v. *Kinsman & trustee*, 8 Mass. 486.

*J. S. Abbott*, for the trustees.

SHEPLEY, C. J. — To secure the payment of certain sums due to Jotham S. Malbon and Elijah Wood, Estes made three notes of $200 each, in the name of Estes and Saunders, and at the same time executed a mortgage in their names of the goods then in a store occupied by Estes, as collateral security for the notes. This was done on December 4, 1848.

Malbon was authorized to sell the goods mortgaged, and sold to the amount of about $180. About $100 of this amount was sold to Estes, for which Malbon did not receive payment. He states that he received about $70 for the goods thus sold. On January 6, 1849, he sold and conveyed his interest in the notes and mortgage to Estes and Brown and received therefor the amount, as he states, due to him from Estes, being about $467. He allowed in part· payment the $70 received for goods sold; received $100 in a note of Estes and Brown payable to Estes' wife, to pay her for that sum before loaned by her to him; and received their note, with Nathaniel Hilton as surety, for the balance due to him of about $304. Service of the trustee process was made upon him on January 29, 1849. At that time he had no goods of Estes and Saunders, unless he should be held accountable for the goods, which were sold by him, while he continued to be a mortgagee. For those sold to Estes he cannot be held accountable. He received no pay for them. They were retransferred to the same member of the firm of Estes and Saunders, from whom they were received. It amounted to no more than a relinquishment of any claim to them by virtue of the mortgage. Nothing was thereby taken from the partnership fund.

When Malbon states in his disclosure, that Estes owed him about $467, it is manifest upon an examination of the whole disclosure, that he did not mean to be understood to say, that the amount was due from Estes alone as a sole debtor. For he subsequently states that $336,17, part of that sum, arose out of a liability assumed for Estes and Allen to Fisk and Dale. The disclosure does not exhibit the manner in which Estes became indebted to him for the difference between that

sum and the $467. It may have been due to him from Estes and Saunders, as the other amount was from Estes and Allen. It not appearing to have been the private debt of a partner, for that amount Malborn might retain the partnership property or its proceeds without being liable to any imputation of fraud upon the creditors of the firm. That amount being greater than the amount received for goods of the partnership sold by him, he is entitled to be discharged.

Elijah Wood, the other mortgagee, states, that he transferred all his interest in the notes and mortgage to Estes and Brown before the service of process upon him, and received in payment of the amount due from Estes to him a note made by Sullivan Lothrop, and that none of the goods mortgaged came into his possession. It does not appear, that the note of Lothrop was given for a debt due to Estes and Saunders. It does not therefore appear, that any goods or funds belonging to the firm of Estes and Saunders came to the possession of Wood, and he is entitled to be discharged.

Nathaniel Hilton appears to have been made an assignee of the mortgage to secure him for becoming surety for Estes and Brown on their note to Malbon. He does not appear to have had possession of or to have exercised any control over the goods, and he must be discharged.

Brown did not hold whatever interest he acquired in the goods as a trustee of Estes and Saunders. He held it as a purchaser for a valuable consideration, and, as he states, without any knowledge, that the mortgage had been made to secure any debt due from Estes alone to Wood or Malbon. Being, so far as appears, a *bona fide* purchaser through others from one of the partners, he cannot be held as trustee of the firm.                    *Exceptions overruled.*

WELLS, HOWARD and HATHAWAY, J. J., concurred.